E-FILED
Tuesday, 14 December, 2010 03:47:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GREGORY DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-3315 |
| | ) | |
| PATRICK QUINN, ERIN DAVIS, | ) | |
| LISA MADIGAN, JAMES SLEDGE, | ) | |
| BARRY MARAM and | ) | |
| ERWIN McEWEN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Gregory Douglas (Douglas) is an employee of the State of Illinois (the State) who has sued Defendants Patrick Quinn, Erin Davis, Lisa Madigan, James Sledge, Barry Maram and Erwin McEwen (the Defendants) for injuries arising from his failure to be promoted. The Defendants are the Governor of Illinois, the State Attorney General and various State employees. They have collectively filed a Motion to Dismiss Plaintiff's Amended Complaint (d/e 28)(Motion). For the reasons stated below, the Defendants' Motion is ALLOWED.

1

## FACTS

Douglas alleges that he is a 53-year old "Native American man" who has been employed by the State since 2001. He was transferred to Central Management Services (CMS), a State agency, in 2001. In 2005, Douglas applied for jobs within CMS, and three other State agencies: Illinois Department of Healthcare and Family Services (DHFS), Illinois Department of Children and Family Services (DCFS) and Illinois Department of Human Services (DHS).

According to Douglas, the American Federation of State, County and Municipal Employees (AFSCME) International Labor Agreement (hereinafter the Agreement) was "the Law" with respect to job qualifications. See Plaintiff's Amended Complaint (d/e 23) (Amended Complaint), at Ex. 1, p. 9 (Douglas' April 6, 2006, email to Mr. Huertas) and p. 11 (Douglas' May 1, 2006, Letter to P. Campbell).[1] The Agreement stated that: "[s]election for promotion and/or voluntary reduction shall be in the following order of priority from among employees certified in their current position classification . . . ." Id. at Ex. 1, p. 11, Item 4.

---

[1] Since Douglas has not numbered the pages of this and other pleadings, the Court will use the page numbers assigned by its electronic case filing system when citing to Douglas' pleadings and exhibits.

When the jobs Douglas sought were ultimately filled by outside consultants who were not current State employees, Douglas sent emails and letters to numerous people complaining about this "violation" of the Agreement.  See, i.e., Amended Complaint, at Ex. 1., p. 11.  Douglas asserts that he had a duty under his "Ethics Training" to disclose "violations" of the Agreement.  Id. at p. 9 (April 6, 2006, email to Mr. Huertas).  However, while he sent emails and letters about alleged violations of the Agreement to numerous people, there is nothing in the record to show that he contacted any of the Defendants.

Following Douglas' complaints, DCFS director Barry Maram suspended him for fifteen days.  See Amended Complaint, at p. 3.  Douglas contends that he was suspended because he spoke out about the "illegal activities" -- unspecified instances of "theft, fraud, gambling" and a cover up.  See Amended Complaint, at pp. 1, 3.  He contends that Maram issued the 15-day suspension in retaliation for his disclosures.  Id. at p. 3.  However, other than Maram's signature on the suspension, Douglas provides nothing to show that any Defendant knew about his complaints or suspension.  Still, he claims that all the Defendants are liable for violations of the First, Seventh and Fourteenth Amendments as well as

violations of the "Whistle Blowers Act" and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. See Amended Complaint, at pp. 1, 3-4.

## JURISDICTION & VENUE

The federal questions posed by Douglas' claims give this Court subject matter jurisdiction. See 28 U.S.C. § 1331. Personal jurisdiction and venue requirements are satisfied because the relevant acts occurred in this judicial district. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "purposefully avail[ed] [himself or herself] of the privilege of conducting activities" in the forum state); see 28 U.S.C. §1391(b) (venue in non-diversity cases is proper in a judicial district where any defendant resides, if all defendants reside in the same State).

## STANDARD OF REVIEW

When reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court looks at the sufficiency of the complaint, not whether the plaintiff has a winning claim. McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir.2000). Still, a complaint must do more than merely "avoid foreclosing possible bases for relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)(quotation omitted). It "must actually suggest that the plaintiff

has a right to relief, by providing allegations that raise a right to relief above the speculative level." Id. (quotation omitted). "Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir.1999)(quotation omitted).

ANALYSIS

Douglas filed his original Complaint on December 2, 2009, and subsequently filed Plaintiff's June 30, 2010, Amended Complaint. See d/e 1 and 23, respectively. "[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward." See Massey v. Helman, 196 F.3d 727, 735 (7th Cir.1999).

In his Amended Complaint, Douglas asserts a violations of his right to free speech, right to property, right to a jury trial, a claim under the "Whistle Blowers Act" and claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Douglas' Title VII assertions consist of disparate treatment and retaliation.

I.  CLAIMS UNDER 42 U.S.C. § 1983

To be liable under 42 U.S.C. § 1983, a defendant must engage in acts

or omissions with a deliberate or reckless disregard for a plaintiff's constitutional rights, or must directly or knowingly consent to the misconduct which comprises the violation. See Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985).

Beyond Barry Maram's signature on the order suspending Douglas, there is nothing to show that any Defendant knew Douglas complained about the Agreement or was involved in giving Douglas a 15-day suspension. Therefore, apart from Barry Maram, no Defendant could be liable under § 1983. See id.

Maram can only be liable if the suspension he signed violated Douglas' constitutional rights. Douglas contends that the suspension was a constitutional violation because it was a form of First Amendment retaliation which deprived him of work/pay in derogation of his Fourteenth Amendment rights.[2]

A claim for First Amendment retaliation under § 1983 involves a three-step inquiry: (1) whether the employee's speech was constitutionally

---

[2] Douglas also contends that the Defendants violated his Seventh Amendment right to a jury trial. However, since this case has not yet reached the trial stage, Douglas's Seventh Amendment right to a jury trial could not possibly have been violated.

protected; (2) whether the protected speech was a but-for cause of the employer's action; and (3) whether the employee suffered a deprivation because of the employer's action. See Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490,501 (7th Cir. 2010).

The question of whether Douglas engaged in constitutionally protected speech is a legal question for a court to decide. See Connick v. Myers, 461 U.S. 138, 148, n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). As the Seventh Circuit explained in Valentino v. Village of S. Chicago Heights, 575 F.3d 664, 671 (7th Cir. 2009), a public employee making a First Amendment retaliation claim cannot succeed without plausibly alleging that he spoke as a private citizen on a matter of public concern.

In Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the United States Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." This means that public employees cannot use the First Amendment to protect themselves from the consequences of speech made in the course of their professional duties. Id. at 426.

As part of his Amended Complaint, Douglas attaches an April 6, 2006, email he wrote to a Mr. Huertas.  See Amended Complaint, at Ex. 1., p. 9.  Douglas' email contends that hiring procedures contained in the union contract were "the Law".  Id.  Douglas' email then asserted that, as a State employee, his "Ethics Training" required him to report legal and ethical violations.  Id.

It has been widely held that "a plaintiff can plead himself out of court by alleging facts which show that he has no claim.").  See Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995).  By admitting that he had a duty under his "Ethics Training" to report legal and ethical violations, Douglas has essentially pled himself out of court.  Since Douglas was a public employee who had an ethical duty to report misconduct, his complaints were not protected speech and he could be disciplined for making them.  See Garcetti, 547 U.S. at 421.  Thus, Maram's suspension of Douglas' suspension did not violate the First or Fourteenth Amendment.

II. WHISTLEBLOWER CLAIM

In his Amended Complaint, Douglas attempts to assert a "Whistle Blowers Act" claim.  See Amended Complaint, at p. 4. However, this Court dismissed that claim with prejudice in its May 13, 2010, Opinion, at p. 6

(d/e 15). As such, Douglas' whistleblower claim is denied.

## III. TITLE VII CLAIMS

Title VII allows employees to hold employers liable for discrimination based on race, color, sex, religion and national origin. See 42 U.S.C. § 2000e-2. Moreover, it permit suits against employers, but not managers, directors or other employees. See Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995)(emphasis added).

Since Douglas' Amended Complaint fails to assert a claim based on race, color, sex, religion or national origin, he has no Title VII claim. See 42 U.S.C. § 2000e-2. Furthermore, because Douglas sued managers, directors and employees -- instead of an employer -- Douglas' Title VII claims are infirm for that reason as well. See Williams, 72 F.3d at 553-54.[3]

## IV. QUALIFIED IMMUNITY

"[G]overnmental actors performing discretionary functions are entitled to qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established

---

[3] If the hostile work environment claim mentioned in Douglas' Response to Defendants' Motion to Dismiss Amended Complaint (d/e 31) was also included in his Amended Complaint -- and thereby properly before the Court -- it would fail for the same reason his other Title VII claims fail. See id.

statutory or constitutional rights of which a reasonable person would have known." <u>Sallenger v. Oakes</u>, 473 F.3d 731, 739 (7th Cir. 2007). To determine whether defendants have qualified immunity, a court must determine whether a plaintiff has plausibly alleged that the defendants violated a Constitutional right, and whether that right was "clearly established at the time of the alleged violation." <u>See</u> <u>Finsel v. Cruppenink</u>, 326 F.3d 903, 906 (7th Cir. 2003). A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right." <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Alternately stated, "in light of pre-existing law the unlawfulness [of the official's actions] must be apparent." <u>Id</u>.

The various Supreme Court and Seventh Circuit precedents cited throughout this Opinion show that the right to free speech and property clearly existed at the time of the alleged violations. However, Douglas' speech was not protected because it was made in the course of his official duties. Aside from Barry Maram's signature on the 15-day suspension, there is nothing to show that any Defendant knew Douglas complained about the Agreement or was involved in the suspension. As for Maram's decision to suspend Douglas, there is nothing to show that the suspension

was unlawful. Thus, Maram and the other Defendants would be entitled to qualified immunity if it was necessary.

V. <u>ELEVENTH AMENDMENT IMMUNITY</u>

As a final matter, the Defendants assert that they are entitled to Eleventh Amendment immunity to the extent Douglas may be suing them in their capacity as state officials. Under the Eleventh Amendment, federal courts are prohibited from "deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities." <u>See</u> <u>Garcia v. City of Chicago, Ill.</u>, 24 F.3d 966 (7th Cir.1994), <u>citing</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). To the extent Douglas is suing any Defendant in the Defendant's official capacity, Douglas' claims are barred by the Eleventh Amendment. <u>Id.</u>

CONCLUSION

THEREFORE, the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (d/e 28) is ALLOWED.

ENTERED this 14th day of December, 2010

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE